| | |
|---|---|
| **EILEEN MILLER,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | )   **Case No. 2:06CV0004MLM** |
| | ) |
| **UNITED STATES DEPARTMENT** | ) |
| **OF AGRICULTURE,** | ) |
| | ) |
| **Respondent.** | ) |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Motion for Summary Judgment filed by Defendant the United States Department of Agriculture, Doc. 19, and the Motion for Summary Judgment filed by Plaintiff Eileen Miller, Doc. 20. The parties have filed Responses.[1] Doc. 22, Doc. 23. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 13.

## UNDISPUTED FACTS

The United States Department of Agriculture ("USDA") administers the Farm Service Administration ("FSA") through local communities. Petitioner was employed by the Knox County FSA as a Program Assistant/Program Technician commencing April 1986.

In a letter dated to Petitioner and her husband, which letter was dated June 19, 2003, Tim Kelley, State Executive Director of the FSA stated that Petitioner and her husband had outstanding corn loans; that on May 22 and 23, 2003, it was determined that the 52,092 bushels of corn securing both loans was no longer stored in the grain bins Petitioner and her husband had designated on their farm; that Petitioner indicated to Mark March, County Executive Director of the Knox County FSA,

---

[1] Neither party has filed a Reply.

that she knew the grain was gone; that the Missouri State FSA Committee reviewed both loan files and determined that unauthorized disposition of collateral mortgaged to Commodity Credit Corporation had occurred; that as a result $94,017.56 was due; that if the debt was not paid within 180 days it would be referred to the Department of Treasury for collection. Administrative Record ("R.") at 46-47. On June 27, 2003, Petitioner and her husband filed for bankruptcy and the FSA was named as a secured creditor. R. at 37-40.

By letter dated April 19, 2004, County Executive Director March notified Plaintiff that she was suspended without pay, pending removal, from her position as a Program Technician with the Knox County FSA for "[u]nauthorized removal and disposal of Commodity Credit Corporation (CCC) mortgaged collateral." R. at 188. The suspension notice stated, in relevant part, as follows:

> Specification 1: Unauthorized removal and disposal of the corn crop which secured CCC 2001 Corn Loan #1007, maturity date 10-31-02. You were a signatory to that loan. On that date, the loan was due and payable. No payment was made on this loan until 03-31-03. The last payment was made 05-09-03. There was a remaining quantity outstanding on this loan as of 05-09-03 of the 14,092 bushels. An initial inspection on 05-22-03 revealed that the storage bins that were supposed to contain subject corn were empty. On 05-28-03, an official measurement spot check was performed and it was determined that the entire 14,092 bushels had been removed without authorization. On 05-29-03 it was confirmed the grain had been disposed of without authorization. You admitted that you knew the corn was gone. The loan at issue was made on, and secured by, the aforementioned corn crop, owned by you and your husband, Steven Watson Miller. Both as a loan signatory and as an experienced FSA employee, you knew or should have known that you were responsible for the resulting lien on the aforementioned crop, for knowing the whereabouts and condition of the crop, and for preventing and/or reporting any unauthorized disposal/attempted disposal of said crop.

> Specification 2: Unauthorized removal and disposal of the corn crop which secured CCC 2001 Corn Loan #1321, maturity date 11-30-02. You were a signatory on that loan. At that time the loan was due and payable. There have been no repayments on this loan. The outstanding quantity on this loan was 38,000 bushels. An initial inspection on 05-22-03 revealed that the storage bins that were suppose to contain subject corn were empty. On 05-28-03, an official measurement spot check was performed and it was determined that the entire 38,000 bushels had been removed without authorization. On 05-29-03 it was confirmed the grain had been disposed of without authorization. You admitted that you knew the corn was gone. The loan at

issue was made on, and secured by, the aforementioned corn crop, owned by you and your husband, Steven Watson Miller. Both as a loan signatory and as an experienced FSA employee, you knew or should have known that you were responsible for the resulting lien on the aforementioned crop, for knowing the whereabouts and condition of the crop, and for preventing and/or reporting any unauthorized disposal/attempted disposal of said crop.

As of 06-19-03, the total outstanding balance on both of the aforementioned loans was $128,974.56, on which no payment had been made. The amount does not include any interest that has since accrued.

...

The offense with which you are charged casts grave doubt on your reliability, trustworthiness and integrity.

You may review documentation supporting the reasons for this proposed action at the Missouri State FSA Office.

You have fifteen (15) calendar days from the date of this notice in which to exercise your right to have this action reviewed by the Knox County Office Committee (COC), as provided by ... Handbook 22-PM. Your appeal may be in writing, in person, or both. You may furnish affidavits or other documents in support of your appeal. If you wish to make a personal appearance before the COC , please so indicate within the above-mentioned 15-day period. The COC will then schedule your appearance. An attorney or other representative of your choice may accompany you. Following any response by you, the COC may remove you from your position, reinstate you, or take other action as appropriate. If you do not respond, the COC's decision will be based on the written record to this matter. ...

R. at 189.

By letter dated April 28, 2004, Petitioner appealed to the Knox County FSA the decision to suspend her. In this appeal Petitioner admitted that she was signatory to the loans and denied that she was aware of the unauthorized removal of the grain from the storage gin until after the fact. R. at 194-95.

By letter dated June 4, 2004, the Knox County FSA Committee informed Petitioner that it was upholding the decision to suspend and remove her from her position; that this action was effective June 12, 2004; and that the action against her was taken in accordance with 7 C.F.R. § 7.28.

The letter further stated that Petitioner had fifteen days to exercise her right to have the action reviewed by the Missouri State FSA Committee. R. at 196.

Petitioner filed an appeal with the Missouri State FSA Committee on June 18, 2004. R. at 207-15. On July 14, 2004, a hearing was held before a panel of the Missouri FSA on Petitioner's appeal. Petitioner appeared at the hearing and was represented by counsel. R. at 218-51.

By letter dated August 11, 2004, Don Fisher, Chairperson of the Missouri State FSA Committee, informed Petitioner that the Missouri FSA had considered the administrative record in Petitioner's case and her responses to the charges made in her notice of suspension including her appearance before the State Committee on July 14, 2004, through her attorney and that the State Committee had decided to uphold the decision of the Knox County FSA Committee to suspend Petitioner without pay and separate her from her position, effective June 4, 2004. R. at 252. In the letter of August 2004 Petitioner was notified that she had fifteen days to seek review of the action with the Deputy Administrator for Field Operations and that she could present a written response or have a hearing. R. at 253.

Petitioner's attorney filed a written appeal with Douglas W. Frago, FSA Deputy Director for Field Operations, on Petitioner's behalf on August 24, 2004, which appeal included affidavits, letters of support, Petitioner's performance work plan, and the transcript of the hearing held before the Missouri State Committee on July 14, 2004. Included was an affidavit from Petitioner's husband stating that Petitioner did not participate in the removal and disposition of the corn; that she had no contemporaneous knowledge of the removal and disposition of the corn; that he told Mark March about the situation in May 2003; and that after a second conversation with Mark March about the unauthorized removal and disposition of the corn he told Petitioner. R. at 269-70.

On September 3, 2004, FSA Deputy Director Frago informed Petitioner's attorney that he received Petitioner's request for review; acknowledged that Petitioner did not wish to have a hearing; and stated that, therefore, he would make his decision based on the written record. Deputy Director Frago also stated that he was forwarding Petitioner's appeal to Judith Herzog, Employee and Labor Relations Branch, Human Resources Division, who was the agency representative in Petitioner's case and that Petitioner would have the opportunity to reply to Ms. Herzog's comments. R. at 296.

On September 29, 2004, John W. Chott, Jr., Assistant to the Deputy Administrator for Field Operations of the FSA, granted an extension of time for the Agency Representative Herzog to reply to Petitioner's filing.

In a memorandum titled "Agency's Response to Appellant's Response/Request for Review to DAFO," dated October 18, 2004, Agency Representative Herzog stated, in relevant part, that:

> As to Appellant's argument that the acts charged to her were not misconduct, said conduct was, under any definition of law, theft, and also caries the implication of fraud or conspiracy to commit fraud. Property, in this case, grain, on which the FSA had a lien, was taken without the knowledge or permission of FSA. Further, the taking of that property was prohibited by the Commodity Credit Corporation (CCC) grain loan contracts, which granted Appellant and her husband large USDA/Federal agriculture loans based on the grain as security. There is no question that the conduct charged to Appellant was correctly labeled as "misconduct."
>
> As to the responsibility for misconduct, Appellant was co-owner, with her husband, both of the CCC grain (hereafter referred to as "grain") and of the property on which the grain was stored. In addition, Appellant was co-signer, with her husband, on the CCC loans which the grain secured. These are facts verified by the ownership and loan documents, and are not in dispute. Appellant's name is literally written all over the grain, the storage property, and the loans. Appellant cannot dismiss her responsibilities for the grain as security for the loans at issue. Whether she actually participated in the removal of the grain, or even knew of it is irrelevant. She was legally and ethically responsible for the security and whereabouts of that grain, and made herself so by co-signing the loan documents. In fact, that is one of the purposes, and results, of having a co-signer on a loan, to spread the responsibility for the security of liens and repayment of the loan. Again, whether she knew of that responsibility, or not, is irrelevant. However, there is no reason to believe Appellant's claim that she was unaware of such. ... As to what actually happened to the grain at issue may depend on which version of the story suited the purpose of Appellant and

her husband at the time of the telling. The transcript of Appellant's and her husband's depositions for their bankruptcy hearing reflects consistent invocation of Fifth Amendment privileges against self-incrimination when they were asked about the disposal of the grain. However, in Appellant's appeal of her removal before the Missouri State FSA Committee (STC), pages 7 and 8 of the transcript reveal that Appellant claimed that the grain was "probably used for feed." The STC transcript also reveals that Appellant's husband admitted to an "unauthorized removal" of the grain, but states that his wife had no "contemporaneous knowledge of such". [] ... Appellant's actual knowledge, or failure to know, is irrelevant. What is relevant is that there was an admission by one co-signer/co-owner of an unauthorized removal of the grain and that it was Appellant's responsibility to know ... the status of grain. ... Appellant ... is a perpetrator, responsible for her own conduct and for the responsibility of knowing, or choosing ignorance of, the status of the CCC grain. ... .

... What agency has charged, ... , is the fact that the collateral didn't just "fail," it was removed without authorization from Agency, and it was an FSA employee and technical expert for that program, that is Appellant, whose grain, loan, and responsibility it was. That is, in fact, the nexus required for removal of an employee ... (citations omitted).

R. at 299-301.

This memorandum proceed to note that in similar cases where off-duty conduct, not necessarily related to the duty of the appellants, involved unauthorized use, disposal, or theft of government or government controlled property, the appellants' conduct was held to have nexus with and adversely impact the performance of duty; "the nexus was that the trustworthiness and credibility of the employee was essential to the job, and was destroyed or rendered doubtful, as in Appellant's case." R. at 301. The memorandum further noted that another point of nexus with Petitioner's duties was that her duties "entail[ed] identifying to management other producers and loan recipients, signers and co-signers, who may have committed the same acts as Appellant and her husband. Appellant's duties also include[d] informing management of the appropriate regulatory consequences for those acts. Neither agency nor the parties to those loans can now have confidence in Appellant's integrity or impartiality in that function." R. at 301. In response to Petitioner's argument that she was improperly removed under 7 C.F.R. § 7.28, the memorandum notes that Petitioner misread this

6

section; that this section does not provide that all of the seven justifications for removal set forth be met; that only one of these justifications must be met; that one justification is "impeding the effectiveness of any program"; and that this justification is met. In response to Petitioner's argument that § 7.28 requires "no reasonable doubt," the memorandum notes that this section makes no such reference; that Petitioner's argument in this regard is based on criminal law; and that criminal law does not apply "in this venue." R. at 302.

In reaching her conclusion, Agency Representative Herzog relied upon affidavits of Petitioner's "line of supervisors." R. at 301. Agency Representative Herzog attached to her memorandum an affidavit from County Executive Director March, Gary Waite, Chairman of the Knox County FSA Office, Thomas Balser, District Director for the Missouri State FSA Office, Donald Fischer, Chairman of the State Committee, and State Executive Director Kelley. R. at 309-318.

On November 4, 2004, Petitioner filed a reply to Agency Representative Herzog's memorandum. R. at 323-28. Among other things, in her reply Petitioner objected "to the presentation of affidavits by the agency representative at this stage of the case because [Petitioner] ha[d] exercised her option to appeal based on the existing record." R. at 323. Plaintiff argued that the "presentation of new affidavits by the agency representative [was] an attempt to add new evidence to the record that was not considered by the State committee." R. at 324. As such, Plaintiff argued that the affidavits should not have been considered and did not provide a basis for the determination of her appeal. R. at 324.

On March 10, 2005, Deputy Administrator Frago provided the final disposition of Petitioner's case. He informed Petitioner's attorney that as Petitioner waived her right to a hearing, his decision was based on the written record; that he reviewed the entire record and discussed the matter with Assistant to the Deputy Administrator Chott; that Chott recommended that the decision of the

Missouri State FSA Committee be sustained; that Deputy Administrator Frago concurred with this recommendation; that the preponderance of the evidence showed that Petitioner knew or should have known about the unauthorized removal and disposal of Commodity Credit Corporation mortgaged collateral; that there was a nexus between Petitioner's assigned programs and the charged offense; and that the penalty of removal is not arbitrary, capricious, or unreasonable. R. at 329.

On January 19, 2006, Petitioner filed the present Petition for review. Petitioner alleges that her rights to due process have been violated and that, therefore, the decision to terminate her employment should be set aside.

## STANDARD FOR SUMMARY JUDGMENT

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at

247. The nonmoving party may not rest upon mere allegations or denials of his pleading. <u>Anderson</u>, 477 U.S. at 256.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. <u>Id.</u> at 255; <u>Raschick v. Prudent Supply, Inc.</u>, 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." <u>Id.</u> at 252.

## STANDARD OF REVIEW UNDER THE ADMINISTRATIVE PROCEDURES ACT

5 U.S.C. § 706(2)(A) and (E) provide that a reviewing court should set aside an agency action, findings, and conclusions where they are "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law" or are "unsupported by substantial evidence." <u>See</u> <u>also</u> <u>United States v. Massey</u>, 380 F.3d 437 (8th Cir. 2004) ("This court should hold unlawful an set aside agency action if it is arbitrary, capricious, an abuse of discretion, contrary to a constitutional right, or without observance of a procedure required by law.") (citation omitted); <u>Sutton v. United States Dept. of Housing and Urban Dev.</u>, 885 F.2d 471, 475 (8th Cir. 1989) ("Our scope of review in a situation in which, as here, an agency has exercised discretion on a matter that lies within its competence is to determine whether the agency has exceeded statutory authority, has acted arbitrarily, or has failed to follow the necessary procedural requirements.").

The United States Supreme Court has held that arbitrary and capricious, in the context of administrative review, means that:

> ... [A] reviewing court may not set aside an agency rule that is rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute. ... The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that

of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." Burlington Truck Lines v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 245-246, 9 L.Ed.2d 207 (1962). In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Bowman Transp. Inc. v. Arkansas-Best Freight System, supra, 419 U.S., at 285, 95 S.Ct., at 442; Citizens to Preserve Overton Park v. Volpe, supra, 401 U.S., at 416, 91 S.Ct., at 823. Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies: "We may not supply a reasoned basis for the agency's action that the agency itself has not given." SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). We will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp. Inc. v. Arkansas-Best Freight System, supra, 419 U.S., at 286, 95 S.Ct., at 442. See also Camp v. Pitts, 411 U.S. 138, 142-143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam).

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co, 463 U.S. 29, 42-43 (1983).

Further, in regard to whether an agency decision is arbitrary and capricious, the Eighth Circuit holds that a determination in this regard "depends on whether 'the agency has ... offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not ascribed to a difference in view or the product of agency expertise.'" Friends of Boundary Waters Wilderness v. Dombeck, 164 F.3d 1115, 1121 (8th Cir. 1999) (internal marks omitted) (citations omitted). Additionally, where an agency's action in terminating an employee is rational based on factors relevant to the decision and where the decision is within the agency's statutory authority, the Eighth Circuit has held such action is not arbitrary or capricious. Sutton, 885 F.2d at 475-76.

To the extent that an agency decision rests on findings of fact, a federal court is obligated to uphold the agency decision if they are supported by substantial evidence. City of St. Louis v. Dept.

of Transp., 936 F.2d 1528, 1533 (8th Cir. 1991). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Id. See also Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Upon reviewing an agency decision the district court should not act as a finder of fact. Camp v. Pitts, 411 U.S. 138, 142 (1973) ) ("[T]he reviewing court [is not] free to hold a de novo hearing ... and thereafter determine whether the agency action was 'unwarranted by the facts.'") (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402(1971)).

Where statutory interpretation is involved and where Congress has assigned to a federal agency "the responsibility of interpreting and administering the statutes in question," "[t]he Supreme Court has many times made clear that this sort of question of law is for the agency to decide, so long as its interpretation of the statute is reasonable." Id. (citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 864-66 (1984)).

**STATUTORY FRAMEWORK APPLICABLE TO REMOVAL OF A FSA EMPLOYEE**

7 C.F.R. § 7.1-.38 governs the Agricultural Stabilization and Conservation State, County, and Community Committees ("ASCS") under which Petitioner's position as a Program Technician falls. As a division of the USDA the ASCS administers USDA programs including price support, agricultural conservation, and loan programs. Krueger v. Lyng, 927 F.2d 1050, 1052 (8th Cir. 1991). 16 U.S.C.§ 590h(b) requires the Secretary of Agriculture "to establish state and local committees to administer these agricultural programs." Id. "The state committees are appointed by the Secretary and the local committees are elected by local farmers." [2] Additionally, 16 U.S.C. § 590h(b) "provides that the Secretary 'shall make such regulations as are necessary relating to the selection and exercise

---

[2]    16 U.S.C. § 590h(b) provides, in relevant part:

(5) State, county, and area committees
(A) Appointment of State committees
The Secretary shall appoint in each State a State committee composed of not fewer than 3 nor more than 5 members who are fairly representative of the farmers in the State. The members of a State committee shall serve at the pleasure of the Secretary for such term as the Secretary may establish.
(B) Establishment and elections for county, area, or local committees
(i) Establishment
(I) In general
In each county or area in which activities are carried out under this section, the Secretary shall establish a county or area committee.
(II) Local administrative areas
The Secretary may designate local administrative areas within a county or a larger area under the jurisdiction of a committee established under subclause (I).
(ii) Composition of county, area, or local committees
A committee established under clause (i) shall consist of not fewer than 3 nor more than 5 members that--
(I) are fairly representative of the agricultural producers within the area covered by the county, area, or local committee; and
(II) are elected by the agricultural producers that participate or cooperate in programs administered within the area under the jurisdiction of the county, area, or local committee.

of the functions of the respective committees, and to the administration, through such committees, of such programs.'" Id.

Petitioner was removed from her position pursuant to 7 C.F.R. § 7.28. Section 7.28 sets forth the grounds upon which county employees of the FSA shall be suspended from office. These grounds are as follows:

> Fails to perform the duties of office; commits or attempts, or conspires to commit fraud; is incompetent; **impedes the effectiveness of any program administered in the county**; violates the provisions of § 7.27 (e) or (f) of this part; refuses to carry out or fails to comply with the equal opportunity and civil rights, including the equal employment policy, or who interferes with others in carrying out such policy; **or** violates official instructions.

(emphasis added).

Section 7.28 also states that a person who is under formal investigation for any of the above-cited reasons may be suspended.

Sections 7.29-7.33 set forth the applicable procedures when an individual is suspended from his or her position pursuant to § 7.28. In particular, § 7.29 states that any person removed pursuant to this section "shall be given a written statement of the reason for such action and shall be advised of the right of review as provided by § 7.30." Section 7.30 provides that

> Any person dissatisfied with a determination of the county committee or county executive director may appeal ... such determination to the State committee. Any person dissatisfied with a determination by the State committee may appeal such determination ... to the Deputy Administrator. Any person dissatisfied with the determination of the Deputy Administrator made under § 7.29 of this part may request a reconsideration of such determination by the Deputy Administrator. Any such appeal or request for reconsideration shall be made within 15 days from the date of the mailing of the determination with respect to which the appeal or request is filed. Except as provided in § 7.31 of this part, such appeals and requests for reconsideration shall be determined on an informal basis. The person filing the appeal or request for reconsideration may present reasons, in writing or in person, or both, why the determination should be reversed or modified. Within 60 days after the reasons have been presented, such person shall be notified of the determination on appeal or

reconsideration. The notification shall clearly set forth the basis for the determination. The determination of the Deputy Administrator is final and not subject to further administrative review.

Section 7.31 provides that any person filing an appeal with the Deputy Administrator or a request for reconsideration of a determination made by the Deputy Administrator under § 7.29 is entitled to a hearing and that if a hearing is not requested "the appeal or reconsideration shall be handled in accordance with § 7.30." Section 7.31 also sets forth the procedures applicable to a hearing and § 7.32 provides that when a hearing is held the hearing officer shall provide the Deputy Administrator with findings, analysis, and a recommendation within sixty days from the date of receipt of the transcript. Section 7.33 provides that within thirty days after receiving the recommendation of the hearing officer "the Deputy Administrator shall make a final determination" and that the "determination of the Deputy Administrator is final and not subject to further administrative review."

## DISCUSSION

**A.     Procedures Followed Regarding Petitioner's Suspension and Removal:**

Petitioner contends that proper procedures were not followed regarding her suspension and removal and that, therefore, her right to due process was violated.[3]  The record reflects that in Petitioner's case each step in the procedures set forth in § § 7.28-7.33 were followed.  In particular, in accordance with § 7.29 Petitioner was notified in writing on April 19, 2003 of her suspension pending removal based on the unauthorized removal and disposal of corn which secured a loan to which Petitioner was a signatory.  This notification stated that Petitioner's offense casts doubt on her reliability, trustworthiness, and integrity.  Section 7.28 provides that any county employee may be suspended for failing to perform the duties of office, for incompetence, for fraud, or for impeding the

---

[3]     The court will assume, arguendo, that Petitioner has a right to due process as alleged.  See Sutton v. United States Dep't of Housing and Urban Dev., 885 F.2d 471 (8th Cir. 1989).

effectiveness of any program. As such, the reasons given to Petitioner in her April 19, 2004, notification are consistent with the justifications articulated in § 7.28 for suspension pending removal. While Petitioner suggests that all of the justifications for suspension stated in § 7.28 must be met, the clear and unequivocal language of this statutory provision is that only one of the justifications must be present; the listed justifications are stated in the alternative. See page 13, supra.

Also, consistent with the requirements of § 7.28 and § 7.30 that Petitioner be advised of her right to appeal, the April 19, 2004 notification also advised Petitioner of her right to appeal the suspension to the county committee. In accordance with this right Petitioner appealed to the county committee which informed her that it was upholding the decision to suspend and remove her.

Consistent with § 7.30 the county committee advised Petitioner of her right to appeal to the State committee, which Petitioner did. Also, in accordance with her rights as provided by § 7.30 Petitioner requested and received a hearing before the State committee. The State committee upheld the county committee's decision to remove Petitioner and, as provided by § 7.28(c), notified Petitioner that she was disqualified from future employment as a member or employee of a FSA county committee. As required by § 7.30, the State committee also informed her of her right to appeal to the Deputy Administrator.

In accordance with § 7.30 Petitioner filed an appeal of the State decision with Deputy Administrator Frago. Consistent with § 7.31, Deputy Administrator Frago assigned Assistant Deputy Administrator Chott as the hearing officer in Petitioner's case; Assistant Deputy Administrator Chott forwarded the record to Agency Representative Herzog for her review and response to Petitioner's appeal; and Herzog prepared a response to which Petitioner replied.

As required by § 7.32, Agency Representative Herzog's response and the record were forwarded to Deputy Administrator Frago. As required by § 7.33, Deputy Administrator Frago then

made a final determination adopting the recommendations of Agency Representative Herzog's response. As such, the court finds that the record establishes that in Petitioner's case the applicable regulations were closely followed and that the agency followed the necessary procedural requirements. See Sutton, 885 F.2d at 475.

**B.     The Decision to Suspend and Remove Petitioner:**

Petitioner contends that the decision to suspend and remove her violated her right to due process, is not supported by substantial evidence, and is arbitrary and capricious.

Pursuant to Petitioner's appeal, Agency Representative Herzog addressed Petitioner's contentions that she was not responsible for the removal of the grain and that she did not have preexisting knowledge of the corn's removal. She discounted these claims of Petitioner and found them not credible based on Petitioner's inconsistent positions regarding the removal of the grain including Petitioner's claiming before the Missouri State FSA Committee that the grain was probably used for feed and Petitioner's taking the Fifth Amendment on this issue during bankruptcy proceedings. Petitioner does not take issue with the facts upon which Herzog relied when discrediting Petitioner. Upon adopting Herzog's conclusions, Deputy Administrator Frago likewise found that Petitioner "knew or should have known about the unauthorized removal and disposal of" the grain. The court finds that Agency Representative Herzog's credibility finding to the extent they were adopted by Deputy Administrator Frago in the final administrative decision are based on substantial evidence. See Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005) (holding that deference to an administrative law judges credibility determination is warranted if the determination is supported by substantial evidence); Sykes v. Bowen, 854 F.2d 284, 287 (8th Cir. 1988); Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).

Agency Representative Herzog concluded that Petitioner's conduct had a nexus with and would adversely impact Petitioner's performance of her job. Deputy Administrator Frago likewise reached this conclusion after considering the Agency's Response to Petitioner's appeal as prepared by Herzog and Petitioner's reply. Agency Representative Herzog noted that Petitioner's job duties involved identifying the conduct of others which is identical to that of Petitioner and her husband and concluded that neither the FSA nor parties to loans could have confidence in Petitioner's integrity or impartiality. Deputy Administrator Frago agreed that such a nexus existed. The reasons articulated by Agency Representative Herzog for justifying Petitioner's suspension and removal as adopted by Deputy Administrator Frago are consistent with§ 7.28 which provides for suspension when an employee is found to impede the effectiveness of a program.

Even assuming, arguendo, that Petitioner did not have contemporaneous or prior knowledge of the removal or disposal of the grain at issue, Petitioner does not dispute that she was a signatory to the loans secured by the grain and, as stated by Agency Representative Herzog, it was clearly Petitioner's responsibility to know the status of the corn. Also, Petitioner does not dispute that her job responsibilities entailed administration of the CCC loan program with which she was accused of violating and that she was responsible for identifying persons who improperly dispose of or removed grain intended to secure loans. Under such circumstances the court finds that the conclusion that parties to loans could no longer have confidence in Petitioner's integrity or impartiality is supported by substantial evidence and as such, the court will defer to the agency's factual findings and factual conclusions. See Camp, 411 U.S. at 142; Friends of Boundary Waters, 164 F.3d at 1121; City of St. Louis, 936 F.2d at 1533. The court further finds whether or not Petitioner had contemporaneous or prior knowledge of the removal or disposal of the grain, that Deputy Administrator Frago's

conclusion, in the final administrative decision that there is a nexus between Petitioner's job and her conduct, is supported by substantial evidence. Krogmeier, 294 F.3d at 1022.

As stated above, 7 C.F.R. § 7.28 provides for suspension pending removal where an individual fails to perform the duties of office, commits or attempts, or conspires to commit fraud, is incompetent, or impedes the effectiveness of any program administered in the county. The FSA's final administrative decision examined the relevant factors, including the conduct to which Petitioner admitted and the requirements of her job, upon reaching the conclusion that she met at least one criteria of § 7.28. Certainly the conclusion that Petitioner's conduct falls within these criteria is rational and does not reflect a clear error in judgment. See Motor Vehicle Manufacturers, 463 U.S. at 42-43. The FSA's explanation for its conclusion that Petitioner met at least one criteria of § 7.28 is consistent with the evidence before it. See Friends of Boundary Waters, 164 F.3d at 1121.

For the reasons more fully set forth above the court finds that the decision to suspend and remove Petitioner was rational based on factors relevant to the decision; that this decision was based on substantial evidence; and that Petitioner's suspension and removal was not arbitrary or capricious. Sutton, 885 F.2d at 475-76.

## C.    Procedural Irregularities:

In addition to her general argument that proper procedure was not followed Petitioner contends that the participation of Assistant to the Deputy Administrator Chott and the participation of Patty Dick and State Executive Director Kelley in the decision to suspend and remove her was improper according to according to the Administrative Procedure Act, 5 U.S.C. § 554(d), which prohibits an employee who is involved in investigation for an agency from participating in an agency decision pursuant to § 557. Petitioner contends that Dick and State Executive Director Kelley were involved in the initial investigation of Petitioner and failed to recuse themselves from the State FSA

investigation. Petitioner also contends that Deputy Administrator Frago improperly consulted Assistant to the Deputy Administrator Chott on an ex parte basis concerning Chott's independent knowledge of relevant facts and that he improperly participated in the final decision because he participated in the prosecution of the FSA corn case against Petitioner.[4]  In regard to Chott, the court notes that the record reflects that Agency Representative Herzog was assigned the preparation of the response to Petitioner's appeal and prepared the recommendation as requested.  Indeed, the record reflects that Chott was assigned to be hearing officer in Petitioner's appeal.  However, a hearing was not held because Petitioner waived her right to a hearing.  While  Herzog's assignment was conveyed to her by Chott and while when the response to Petitioner's appeal was completed Herzog conveyed it to Chott who in turn conveyed it to Frago, the record does not reflect that Chott played any role in the preparation of Agency Representative Herzog's written response.  Although Deputy Administrator Frago did state in the final  administrative decision that he discussed Petitioner's case with Chott, the court finds that this alleged procedural irregularity as well as the alleged improper participation of Dick and Kelley did not affect the outcome of Petitioner's case given the fact that Petitioner does not refute that she was employed by the FSA as a Program Assistant/Program Technician; that Petitioner was a co-owner of the grain which was held as collateral for agricultural loans; that she was co-owner of the land upon which the grain was stored; that she was a co-signer on the agricultural loans; that there was unauthorized removal and disposal of the grain which secured the loans;  that Petitioner was legally responsible for knowing the whereabouts and the condition of the grain; that Petitioner's duties as a employee of the FSA included identifying persons who may have improperly removed and/or destroyed grain used as collateral for agricultural loans; and that she does not deny that she gave

---

[4]        Chott acknowledges in an affidavit that he discussed Petitioner's case with Frago and that he recommended that the decision to remove her not be reversed. R. at 5-8.  Frago verified these discussions in an affidavit. R. at 4-5.

inconsistent responses in regard to questioning about the grain's disappearance. See Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003) (holding that pursuant to substantial evidence standard of review an administrative decision should be affirmed where the record supports an overall conclusion).

Petitioner also contends that the record was "adulterat[ed] ... with ex parte arguments and evidence." In this regard Petitioner states that notations disparaging Petitioner's evidence were made on the transcript of her hearing and on the text of the brief in support of her appeal. The court notes that these comments reflect only the notations and responses of a person reviewing Petitioner's file.

Petitioner further contends that Agency Representative Herzog obtained "five new affidavits" which were not previously in the record. R. at 309-19. The court notes in this regard that, in support of her appeal, Petitioner herself submitted ten letters of support which had not previously been in the record. Moreover, the subject matter of the affidavits obtained by Agency Representative Herzog relates to the ability of a generic FSA employee who is responsible for administering the CCC Program to perform his or her job given his or her involvement with the unauthorized removal of any CCC crop. The subject matter of the affidavits, therefore, did not directly address the validity of the charges against Petitioner.

For the reasons fully set forth above, the court finds, therefore, that substantial evidence supports the conclusions of Deputy Administrator Frago that there was a nexus between Petitioner's assigned programs and the charged offense and that the preponderance of the evidence shows that Petitioner knew or should have known of the unauthorized removal of the grain. Additionally, the court finds that while there may have been procedural irregularities in the above described proceedings, none of these irregularities affected the outcome of Petitioner's case. As such, the final determination of Petitioner's case by Deputy Administrator Frago is supported by substantial evidence,

is not arbitrary and capricious, and does not evidence an abuse of discretion.  See Sutton, 885 F.2d at 475.

## CONCLUSION

For the reasons more fully set forth above, the court finds that the decision of the FSA to suspend and remove Petitioner should be affirmed as it is supported by substantial evidence and as it is not arbitrary or capricious.  The court further finds that Respondent's Motion for Summary Judgment should be granted and that Petitioner's Motion for Summary Judgment should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Respondent is **GRANTED**; Doc. 19

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Petitioner is **DENIED**; Doc. 20

**IT IS FURTHER ORDERED** that a separate judgment shall issue this same date incorporating this Memorandum Opinion.


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 19th day of  September, 2006.